UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DARRELL LANCEY BROWN, III                                   Plaintiff

v.                                                                       Civil Action No. 3:18-cv-P762-RGJ

RYAN SLAUBAUGH *ET AL.*                                 Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* prisoner civil-rights action. This matter is before the Court upon a motion for summary judgment by Defendants Ryan Slaubaugh and Chase McKeown (collectively "Defendants") [DE 51]. Plaintiff Darrell Lancey Brown, III, filed a response [DE 53] and Defendants replied [DE 54]. This matter is ripe. For the reasons below, the Court **GRANTS** Defendants' motion for summary judgment [DE 51].

**I. BACKGROUND**

Plaintiff initiated the instant action when he was a pretrial detainee. Because Plaintiff's claims pertained to his ongoing state-court criminal action, the Court stayed this action pending the final disposition of Plaintiff's criminal case.

Before his state-court criminal trial, Plaintiff moved to suppress all evidence related to the police search, alleging that the search and seizure violated the Fourth Amendment. The state trial court denied Plaintiff's motion to suppress. After a three-day trial, a jury found Plaintiff guilty of trafficking in a controlled substance, first degree; possession of drug paraphernalia; possession of marijuana; and first degree bail jumping. Plaintiff was sentenced to twenty years in prison. Plaintiff appealed his conviction to the Kentucky Supreme Court. The Kentucky Supreme Court held that Defendants' search of Plaintiff's car and person had violated Plaintiff's constitutional

rights and that the fruits of their search should have been suppressed at trial. *Brown v. Commonwealth*, No. 2019-SC-0268-MR, 2020 Ky. Unpub. LEXIS 77 (Ky. Dec. 17, 2020). The Kentucky Supreme Court, therefore, reversed Plaintiff's convictions for trafficking in a controlled substance, first degree; possession of marijuana; and possession of drug paraphernalia. *Id*.

Following Plaintiff's notice of the Kentucky Supreme Court decision reversing the convictions pertinent to his claims, the Court lifted the stay and conducted an initial review of this action pursuant to 28 U.S.C. § 1915A. Upon review, the Court allowed individual-capacity claims to proceed against Defendants for illegal search and seizure, false arrest, and unlawful imprisonment under the Fourth Amendment.

## II. UNDISPUTED FACTS

Defendants are Elizabeth Police Department ("EPD") officers. At 11:33 p.m. on February 9, 2018, Hardin County dispatch received a call from an employee at a grocery store who reported that a white vehicle had been parked in the grocery store parking lot "with headlights on for over 2 hours." [DE 51-7 at Page ID 404 ("EPD Call Detail Report")]. Defendant Slaubaugh responded to the call to do a welfare check on the occupant(s) of this vehicle at 11:37 p.m. [DE 51-2 at Page ID 304-305, ¶ 3 ("Defendant Slaubaugh Aff.")]. Defendant Slaubaugh has been an officer with EPD since 2013 and is a certified Drug Recognition Expert. *Id*. at Page ID 304 ¶¶ 1-2.

When Defendant Slaubaugh arrived at the parking lot, it was dark, and all the stores were closed. [DE 51-11 ("Slaubaugh Dashcam Video")]. Defendant Slaubaugh pulled behind Plaintiff's running car in his marked police cruiser, without activating his blue light lights, *see id*., and ran the car's license plate. [DE 51-13 at Page ID 541 ("Transcript Slaubaugh Bodycam")]. He learned that the vehicle belonged to Amanda True. *Id*. Soon after, Defendant Keown arrived

as a back-up officer. Defendant Slaubaugh then approached the driver's side of the vehicle. Defendant Slaubaugh's Investigation Narrative states:

> I made contact with a male subject who I identified as [Plaintiff] Darrell Brown. Brown was laying over in the seat with his arms folded on the center of the console and he was asleep. I knocked on the window and Brown woke up and rolled down the window to talk to me. I asked Brown if everything was OK and he stated yes. I asked Brown what he was doing there and he stated that he was waiting for his girlfriend to call him back to tell him it was ok for him to come home. Brown stated that he must have fallen asleep waiting.

[DE 51-11 at Page ID 535 ("EPD Slaubaugh Investigation Narrative")]. During this interaction, Defendant Slaubaugh asked Plaintiff who the car belonged to, and Plaintiff stated that it belonged to his girlfriend, Amanda True. [DE 51-13 at Page ID 542 ("Transcript Slaubaugh Bodycam")]. During this interaction, Defendant Slaubaugh did not notice the smell of any illegal substance or alcohol. [DE 51-9 ("Suppression Hearing Video")].

Defendant Slaubaugh then walked back to his patrol vehicle with Plaintiff's license to see if Plaintiff "had any warrants." *Id*. In so doing, Defendant Slaubaugh ran Plaintiff's driver's license through "NCIC"[1] and the EPD'S "Spillman System."[2] [DE 51-11 at Page ID 535 ("EPD Slaubaugh Investigation Narrative")]. On his way back to his patrol car, Defendant Slaubaugh reported to another officer that he had observed some loose tobacco in Plaintiff's vehicle. [DE 51-13 at Page ID 542 ("Transcript Slaubaugh Bodycam")].

When Defendant Slaubaugh ran Plaintiff's license through the two systems, he learned the following:

1. Plaintiff had no outstanding warrants. [DE 51-9 ("Suppression Hearing Video")].

---

[1] In Defendants Memorandum of Law in Support of their Motion for Summary Judgment, they refer to the NCIC as the "Mobile Cop" system and explain that it provides officers with information about a vehicle, the driver's license, and lists any outstanding warrants. [DE 51-1 at Page ID 266].

[2] In the same Memorandum, Defendants explain that the "Spillman System" is the EPD's in-house system where they record any interactions with an individual. They state that "some entries may be formal convictions, whereas other entries may simply be where a person was a possible suspect, was stopped, questioned, etc." *Id*.

2. Plaintiff had had 36 prior "interactions" with the EPD. [DE 51-14 at Page ID 579 ("Spillman Record List")].
3. A welfare check had been conducted on Plaintiff eleven days prior, on January 29, 2018. *Id.* During that incident, another officer had checked on Plaintiff who "was asleep in his vehicle and advised that he was waiting for a friend to call him." [DE 51-15 at Page ID 581 ("Law Incident Table 1-29-18")].
4. Plaintiff was a suspect in the theft of a vehicle on September 9, 2017. [DE 51-14 at Page ID 579 ("Spillman Record List")].
5. Plaintiff was convicted for possession of a controlled substance following an arrest on September 17, 2016. *Id.*

When Defendant Slaubaugh returned to Plaintiff's vehicle, he asked Plaintiff to step out of his car. [DE 51-13 at Page ID 542 ("Transcript Slaubaugh Bodycam")]. Plaintiff consented to a pat-down search for weapons which yielded nothing. *Id.*

Defendant Slaubaugh then asked Plaintiff to stand in front of his police car. *Id.* Defendant Slaubaugh proceeded to ask Plaintiff a series of questions. Defendant Slaubaugh first asked Plaintiff why he was sleeping in parking lots "around town." *Id.* Plaintiff responded that he awaited his girlfriend to get off work so he could go to her house. *Id.* at ID 547. He explained that she did not have the money to get a key made for him. *Id.* Defendant Slaubaugh then asked Plaintiff why there was "tobacco shake all over the window." *Id.* at 548. Plaintiff explained that he had been rolling his own cigarettes using pipe tobacco because pipe tobacco is much cheaper than tobacco for cigarettes. *Id.* Defendant Slaubaugh then asked him if there was anything illegal in the car, and Plaintiff said there was not. *Id.* at 549. Defendant Slaubaugh asked Plaintiff when the last time was that he "got in trouble for drugs" and Plaintiff responded "two years." *Id.* Defendant Slaubaugh asked Plaintiff about the "the stolen vehicle incident" in September, and Plaintiff responded that although the vehicle he was driving had been reported stolen he was "never charged for anything." *Id.* Defendant Slaubaugh then asked Plaintiff how long he had been "clean," and Plaintiff told him nineteen months. *Id.* Defendant Slaubaugh asked Plaintiff if his drug of choice was methamphetamine when he was using drugs, and Plaintiff stated that he had

4

used "alcohol, methamphetamine" and a "few other drugs over the years." *Id*. at 550. During this interaction, Defendant Slaubaugh did not make any observations about Plaintiff which indicated to Defendant Slaubaugh that he was under the influence of anything. [DE 51-10 at Page ID 419 ("Criminal Trial Transcript")].

Defendant Slaubaugh then asked Plaintiff if he could search his vehicle. [DE 51-13 at Page ID 551 ("Transcript Slaubaugh Bodycam")]. Plaintiff responded that it was his girlfriend's car and that she had told him not to allow anyone to search it. *Id*. at 551-52. After being denied permission to search the car, Defendant Slaubaugh proceeded to walk around Plaintiff's car looking inside it at different angles with a flashlight. [DE 51-11 ("Slaubaugh Dashcam Video")]. The walk-around lasted for approximately one minute and twenty-seven seconds. *Id*. At the end of the walk-around, Defendant Slaubaugh observed what he believed to be a "little green bag of marijuana" in the floorboard behind the driver's seat. [DE 51-13 at Page ID 554 ("Transcript Slaubaugh Bodycam")]. When he asked Plaintiff if there was anything in the illegal car other than that "little bit of marijuana," Plaintiff responded no. *Id*.

Defendant Slaubaugh then placed Plaintiff in handcuffs, searched his person, and found another clear baggie with a white powder substance. [DE 51-11 at Page ID 536 ("EPD Slaubaugh Investigation Narrative")]. Defendant Slaubaugh searched Plaintiff's car and found a marijuana cigar, a plastic container containing ten baggies of suspected methamphetamine; two digital scales, multiple baggies, and two packages of cigarillos. [DE 51-19 at Page ID 631-32 ("Chain of Custody Report.")]. Defendant Slaubaugh then arrested Plaintiff and charged him with trafficking in a controlled substance, first degree (methamphetamine); possession of a controlled substance (methamphetamine), first degree (methamphetamine); possession of marijuana; and drug paraphernalia – buy/possess. [DE 51-20 at Page ID 633 ("Uniform Citation")].

5

### III. LEGAL STANDARDS

**A. Summary Judgment**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id*. at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

**B. Qualified Immunity**

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a

reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When advanced by a defendant, qualified immunity is a threshold question of law appropriately determined on a motion for summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800 (1983). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The plaintiff bears the ultimate burden of proof in establishing that a defendant has no right to qualified immunity. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). That said, in moving for summary judgment based on qualified immunity, a defendant must first show "facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id*. The burden then shifts to the plaintiff to show "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Est. of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017). If "undisputed facts show that the defendant's conduct did indeed violate clearly established rights[,]" or "if there is a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights[,]" a court must deny summary judgment. *Gardenhire*, 205 F.3d at 311 (quoting *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988) (citations omitted)).

The Supreme Court requires a two-pronged approach when resolving questions of qualified immunity, although courts may decide the order in which to address these prongs "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. First, the Court must decide whether a plaintiff has presented facts sufficient to find a violation of a constitutional right. *Id*. at 232. The Court views this evidence in the light most favorable to the plaintiff. *See Shreve*, 743 F.3d at 134. Second, the Court must decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Thus, qualified immunity applies unless the official's conduct violates a clearly established constitutional right. *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the court finds that the plaintiff's right was not clearly established, the Court can start with the second factor and does not "need to determine whether the alleged conduct was in fact unconstitutional." *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (citing *Pearson*, 555 U.S. at 236-43)).

## IV. ANALYSIS

### A. Unlawful Seizure

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "A warrantless search or seizure is '*per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.'" *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also United States v. Sweeney*, 891 F.3d 232, 235 (6th Cir. 2018) (citing *California v. Carney*, 471 U.S. 386, 390 (1985)).

Interactions between the public and police officers fall into three categories: 1) consensual encounters between police officers and citizens: 2) a temporary involuntary detention or *Terry*[3] stop which must be predicated upon reasonable suspicion; 3) and arrests which must be based on probable cause. *United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007) (citing *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994)). Here, neither party disputes that Defendant Slaubaugh was conducting a lawful welfare check, or embarking on a consensual encounter with Plaintiff, when he approached Plaintiff's vehicle in a grocery store parking lot in response to a call from a grocery store employee who reported that a white vehicle had been parked in the grocery store parking lot "with headlights on for over 2 hours." [DE 51-7 at Page ID 404 ("EPD Call Detail Report")]. *See, e.g.*, *United States v. Rodriguez-Rodriguez*, No. CR 06-0537 JB, 2006 U.S. Dist. LEXIS 95359, at *5 (D.N.M. Dec. 11, 2006) (explaining that a welfare check "is a stop to make sure the driver is okay and in a condition to drive").

In *United States v. Lee*, the district court explained how a welfare check is similar to a traffic stop in various ways, including that once the mission of the initial welfare check is completed, and a *Terry* stop begins, an officer must have reasonable suspicion to believe criminal activity is afoot to justify an individual's continued detention. No. 17-120 WES, 2018 U.S. Dist. LEXIS 137794 (D.R.I. Aug. 15, 2018); *see also Turk v. Comerford*, 488 F. App'x 933, 946 (6th Cir. 2012) ("Once a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment.") (quoting *Campbell*, 486 F.3d at 954 (6th Cir. 2007)).

---

[3] In *Terry v. Ohio*, the Supreme Court held that when a law enforcement officer has a reasonable, articulable suspicion that a person may be involved in criminal activity, he may conduct a brief investigatory stop of the person. 392 U.S. 1, 30-31 (1968).

> "[R]easonable suspicion exists when, based on the totality of the circumstances, a police officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011). This standard requires "more than a mere hunch," but at the same time "is satisfied by a likelihood of criminal activity less than probable cause" and far less than "a preponderance of the evidence." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778-79 (6th Cir. 2006)). "In considering all the circumstances, the question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot." *United States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005).

*Bey v. Falk*, 946 F.3d 304, 313 (6th Cir. 2019).

Here, neither party seems to dispute that the welfare check ended once Defendant Slaubaugh failed to observe anything about Plaintiff which suggested that he was in danger, posed a danger to others, needed medical attention, or was not in a condition to drive. It was at this time that Defendant Slaubaugh told Plaintiff he would take his license back to his patrol car to perform a warrant check. Because Plaintiff does not specifically argue that this action violated his constitutional rights, the Court does not address it .[4]

The two background checks then conducted by Defendant Slaubaugh provided him the following new information about Plaintiff – Plaintiff had had prior "interactions" with the EPD; a welfare check had been conducted on Plaintiff eleven days prior, and during that incident, another EPD officer had checked on Plaintiff who "was asleep in his vehicle and advised that he was waiting for a friend to call him"; Plaintiff had been a suspect in the theft of vehicle; and Plaintiff

---

[4] Defendants argue that Defendant Slaubaugh's decision to take Plaintiff's license back to his patrol car to perform a warrant check is supported by two legal doctrines. First, Defendants cite *Rodriguez v. United States*, 575 U.S. 348 (2015). In *Rodriguez*, the Supreme Court held that ordinary inquires incident to a traffic stop typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 355. Defendants, however, make no argument regarding how *Rodriguez* applies to an encounter that began as a welfare check. Defendants also argue that after Defendant Slaubaugh's initial encounter with Plaintiff, he had reasonable grounds to suspect that Plaintiff was engaged in "drug-related activity." According to Defendants, Defendant Slaubaugh's grounds for reasonable suspicion at this point were that he had discovered Plaintiff asleep in a parked, running vehicle in an empty grocery store parking lot late at night, where he had allegedly been parked for over two hours, in a car that was not his own, and with "tobacco shake" on the driver's side windowsill.

was convicted for possession of a controlled substance following an arrest on September 17, 2016. [DE 51-14 at Page ID 579 ("Spillman Record List")].

Based on this information, Defendant Slaubaugh decided to get Plaintiff out of his vehicle, conduct a pat down search of Plaintiff, and subjected him to a new round of questioning. Plaintiff argues that it is at this point his detention became illegal because Defendant Slaubaugh knew there were no outstanding warrants for Plaintiff and had no reason to believe that Plaintiff had broken any laws. As stated above, the Kentucky Supreme Court agreed with Plaintiff and found that the reasonable suspicion of Defendant Slaubaugh should have been satisfied at this time, and that the continued detention of Plaintiff was unlawful. *Brown*, 2020 Ky. Unpub. LEXIS 77, at *4.

The Court finds that it need not determine whether the continued detention of Plaintiff was unconstitutional because, even if it were, the Court concludes that a reasonable officer in Defendants' position could conclude that the detention of Plaintiff after conducting the background checks was lawful because they learned new information which supported their suspicion that Plaintiff was engaged in "drug-related activity."[5] Thus, they are entitled to qualified immunity on this claim. *See Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ("a Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right") (cleaned up) (citation omitted); *Bullman v. City of Detroit*, 787 F. App'x 290, 296 (6th Cir. 2019) (holding qualified immunity warranted for a traffic stop because reasonable officers could disagree over whether the officers had reasonable suspicion for the stop).

---

[5] In his testimony at the suppression hearing, Defendant Slaubaugh stated that Plaintiff was not free to leave at this point. Thus, for purposes of the Fourth Amendment, Plaintiff was "seized" at this point in the encounter at the latest. [DE 51-9 ("Suppression Hearing Video")].

The Sixth Circuit has repeatedly held that reasonable suspicion must be assessed under the "totality of the circumstances," *Bey*, 946 F.3d at 313, considering "all of the information available to law enforcement officials at the time." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citation omitted). Indeed, courts "must look at the aggregate, not each factor or consideration in isolation." *United States v. Keeling*, 783 F. App'x 517, 521 (6th Cir. 2019) (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (explaining that, under *Terry*, courts must avoid "this sort of divide-and-conquer analysis"); *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (explaining that even if each individual circumstance or factor suggests innocent conduct, the circumstances "taken as a whole" may provide reasonable suspicion)). The Sixth Circuit has repeatedly affirmed findings based on an aggregation of factors that, alone, would be insufficient. *See, e.g.*, *United States v. Calvetti*, 836 F.3d 654, 666-67 (6th Cir. 2016) (finding reasonable suspicion based on "two strong indicators"—dubious travel plans and relevant criminal history—along with nervousness and inconsistent statements); *United States v. Winters*, 782 F.3d 289 (6th Cir. 2015) (finding reasonable suspicion based on nervousness, inconsistent travel plans, and an odd rental arrangement); *United States v. Campbell*, 511 F. App'x 424 (6th Cir. 2013) (finding reasonable suspicion based on visible nervousness, history of drug charges, and 'an unusually strong smell of air freshener"); *United States v. Paulette*, 457 F.3d 601 (6th Cir. 2006) (finding reasonable suspicion based upon criminal history, suspicious hand movements, efforts to evade police, and presence in a high-crime area). Moreover, courts must also recognize that that "[o]fficers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Perez*, 440 F.3d at 371 (quoting *Arvizu*, 534 U.S. at 273).

At the time Defendants decided to get Plaintiff out his car, they had the following information: they had discovered Plaintiff asleep in a parked, running vehicle in an empty grocery store parking lot late at night, where he had reportedly been parked for over two hours, in a car that was not his own; the vehicle had "tobacco shake" on the driver's side window sill;  Plaintiff had had several prior "interactions" with the EPD; a welfare check had been conducted on Plaintiff eleven days prior, on January, 29, 2018, and during that incident, another EPD officer had checked on Plaintiff who "was asleep in his vehicle and advised that he was waiting for a friend to call him"; and Plaintiff was convicted for possession of a controlled substance following an arrest on September 17, 2016.

Courts have recognized that sleeping in a vehicle is one circumstance that may contribute to reasonable suspicion that drug-related activity may be afoot. *See, e.g.*, *United States v. Otero*, No. 16-2675-JTM, 2019 U.S. Dist. LEXIS 42521, at *7 (D. N. Mex. Mar. 15, 2019) ("Even if sleeping in a vehicle is not illegal, it is unusual.  It is even more unusual if the vehicle is parked in a public area.  And it is even more unusual still, if the person is sleeping in an idling car.").  That Defendants learned that Plaintiff had been found asleep in a parked, running car only eleven days prior must also be viewed as reasonably contributing to such suspicion.  Defendant Slaubaugh also avers that loose tobacco can "indicate drug-related activity, as persons will empty cigar or cigarette papers and fill them marijuana or other drugs."  [DE 51-2 at Page ID 305, ¶ 7 ("Defendant Slaubaugh Aff.")]. Finally, the Sixth Circuit has recognized that a suspect's criminal history may also be considered in determining whether there is reasonable suspicion, although criminal history, by itself, does not give rise to reasonable suspicion. *Joshua v. DeWitt*, 341 F.3d 430, 446 (6th Cir. 2003).

Thus, although it is a close call, the Court finds that a reasonable officer in Defendant Slaubaugh's position could have believed that he had reasonable suspicion to continue to detain Plaintiff when he did. The Court finds, therefore, that Defendants are entitled to qualified immunity on Plaintiff's illegal seizure claim.

## B. Unlawful Search, False Arrest, and False Imprisonment

The Court allowed three other claims to proceed on initial review – a Fourth Amendment unlawful search claim and Fourth Amendment false arrest and false imprisonment claims.[6] As discussed above, during Defendant Slaubaugh's final walk-around of Plaintiff's vehicle with his flashlight, he observed in "plain view" what he believed to be a "little green bag of marijuana" in the floorboard behind the driver's seat. When he asked Plaintiff if there was anything illegal in the car other than that "little bit of marijuana," Plaintiff responded no. Defendant Slaubaugh then placed Plaintiff in handcuffs, searched his person, and found another clear baggie with a white powder substance. Defendant Slaubaugh then put Plaintiff in the back of Defendant Keown's cruiser and searched Plaintiff's vehicle. During the search of the vehicle, Defendant Slaubaugh found a marijuana cigar, a plastic container containing ten baggies of suspected methamphetamine,

---

[6] For these claims, Defendants argue that Plaintiff is collaterally estopped from litigating whether Defendants had probable cause to search his vehicle and arrest him because the state court found that there was probable cause at a preliminary hearing; the grand jury's indictment conclusively established probable cause; and the denial of Plaintiff's motions for a directed verdict of acquittal established probable cause. [DE 51-1 at Page ID 285-288 ("Memorandum in Support of Motion for Summary Judgment")]. However, of all the cases cited by Defendants to support these arguments, it does not appear that any involves a procedural posture which exists in this case where the Kentucky Supreme Court, contrary to preliminary hearing findings, a grand jury indictment, and the trial court's denial of a directed verdict, found Plaintiff's prolonged seizure and search to be unconstitutional and reversed Plaintiff's convictions. Yet the Court finds that it need not address this issue because it is holding that Defendants are entitled to summary judgment for other reasons. And, as to Defendants' argument that they are entitled to qualified immunity because these various findings show that it was "clearly established" that they had probable cause to search Plaintiff's vehicle and arrest him, this argument is ill-founded. When determining whether a right is clearly established, the Sixth Circuit looks first to "decisions of the United States Supreme Court, then to the Sixth Circuit's own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeal." *Andres v. Hickman Cnty.*, 700 F.3d 848, 853 (6th Cir. 2012). Moreover, to be "clearly established" for qualified immunity purposes the right had to be "'clearly established' at the time of the challenged conduct," not as determined in judicial proceedings that followed. *Ashcroft v. al-Kidd*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818).

two digital scales, multiple baggies; and two packages of cigarillos. Defendant Slaubaugh then arrested Plaintiff and charged him with trafficking in a controlled substance, first degree (methamphetamine); possession of a controlled substance (methamphetamine), first degree (methamphetamine); possession of marijuana; and drug paraphernalia – buy/possess.

Plaintiff does not make specific arguments about his unlawful search, false arrest, and false imprisonment claims. However, he implies that the search of his vehicle and person and his subsequent arrest were unlawful because they only resulted from Defendant Slaubaugh's discovery of a baggie of marijuana during his "prolonged" seizure of Plaintiff. The Court presumes that this argument is based on the "fruit of the poisonous tree" evidentiary rule which caused the Kentucky Supreme Court to reverse Plaintiff's convictions finding that because Defendants unlawfully extended the seizure of Plaintiff, the fruits of Defendants' subsequent searches should have been suppressed at trial. This exclusionary rule precludes the government from using evidence acquired during an unconstitutional search and seizure in a criminal prosecution against the victim of the unconstitutional action. *United States v. Calandra*, 414 U.S. 338, 347 (1974).

Federal courts have widely held that the exclusionary rule and the fruit of the poisonous tree doctrine do not apply to § 1983 actions. *See, e.g.*, *Lingo v. City of Salem*, 832 F.3d 953, 960 (9th Cir. 2016) ("[N]othing within the fruit-of-the-poisonous-tree doctrine suggests that an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search."); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("[T]he exclusionary rule does not apply in a civil suit against police officers. . . . Accordingly, the officers can rely on the evidence that they found in the [Plaintiffs'] trailer to prove that the arrest warrants were supported by probable cause."); *Townes v. City of New York*, 176 F.3d 138, 146, 148 (2d Cir. 1999) ("In a § 1983 suit . . . . [t]he fruit of the poisonous tree

doctrine is not available to elongate the chain of causation. . . . The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."); *Davis v. Baker*, No. 5:19-107-KKC, 2019 U.S. Dist. LEXIS 201019, at *20-21 (E.D Ky. Nov. 18, 2019) (a finding *Townes* persuasive and therefore concluding that, even if a traffic stop were unconstitutional, the subsequent search was not because the odor of marijuana from the vehicle gave the defendants probable cause to search the vehicle); *Martin v. Coyt*, No. 1:10-CV-00176-R, 2012 U.S. Dist. LEXIS 61997, at *36-37 (W.D. Ky. May 3, 2012) (holding that because the Fourth Amendment's exclusionary rule does apply to § 1983 proceedings "the lack of probable cause to initially arrest and search the plaintiff did not vitiate [the defendant]'s discovery of the pill and the legitimate probable cause to arrest . . . ."); *Cobb v. City of Columbus*, No. C-2-99-579, 2000 U.S. Dist. LEXIS 22065, at *14 (S.D. Ohio Oct. 20, 2000) (noting that the Sixth Circuit had not yet addressed this issue but finding the Second Circuit's reasoning in *Townes* persuasive concluding that even if a stop and search were unlawful, the plaintiff's false arrest and false imprisonment claims failed because the drug paraphernalia found justified the defendants' brief detention of the plaintiff to issue him a misdemeanor summons).

In light of this jurisprudence, the Court determines that even if Defendants' seizure of Plaintiff at the time Defendant Slaubaugh discovered the baggie of marijuana violated the Fourth Amendment, the subsequent search of Plaintiff's vehicle does not give rise to a constitutional violation. Under the automobile exception, "[p]olice officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime.'" *Nykoriak v. Wileczek*, 666 F. App'x 441, 445 (6th Cir. 2016) (quoting *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)); *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) (finding probable cause to search entire automobile existed after officer observed narcotics in plain view

on the floorboard)); *Griesmar v. City of Stow*, No. 22-3151, 2022 U.S. App. LEXIS 34151, at *13 (6th Cir. Dec. 12, 2022) (finding probable cause to search vehicle without a warrant after the officer smelled marijuana) (citations omitted). [7]

As to Plaintiff's false arrest and false imprisonment claims, "when a false-imprisonment claim arises out of an alleged false arrest—as it does in this case—[the] claims are identical, so we will simply refer to those two claims together as a false-arrest claim." *Weser v. Goodson,* 965 F.3d 507, 513 (6th Cir. 2020) (citation omitted). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted). Put another way, "[an] officer can lawfully arrest [an individual] so long as there is probable cause to arrest [the individual] for some crime." *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (citation omitted). Here, upon discovery of the baggie of marijuana, suspected methamphetamine, and drug paraphernalia in the vehicle, Defendants had probable cause to arrest Plaintiff. *See, e.g., Griesmar v. City of Stow*, 2022 U.S. App. LEXIS at *15 ("Because Griesmar's arrest was supported by probable cause for the crime of possession of marijuana, she has demonstrated no violation of her Fourth Amendment rights.").

Thus, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment unlawful search, false arrest, and false imprisonment claims because the undisputed facts show that Defendants had probable cause to search Plaintiff's vehicle and then to arrest Plaintiff based on the evidence of criminal drug-related activity they found during the search.

---

[7] While the existence of probable cause is typically a jury question, where there is only one reasonable determination possible, such a claim may be resolved on summary judgment. *See, e.g., Fridley v. Horrighs*, 291 F.3d 897 (6th Cir. 2002)

## V.  CONCLUSION

For all these reasons, and being otherwise sufficiently advised, it is **ORDERED** that Defendants' motion for summary judgment [DE 51] is **GRANTED**.

The **Clerk of Court** is **DIRECTED** to terminate the motion at DE 51 and close the case.

Rebecca Grady Jennings, District Judge
United States District Court

February 27, 2023

cc:    Plaintiff, *pro se*
       Counsel of Record
A961.011